Ronald Ryan
Ronald Ryan PC
Attorney for Debtors
1413 E. Hedrick Drive
Tucson, AZ 85719
(520)298-3333 ph 743-1020 fax
ronryanlaw@cox.net
AZ Bar #018140 Pima Cty #65325

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF ARIZONA, TUCSON DIVISION

| | |
|---|---|
| In re: LUCY SANTA CRUZ | Adversary # 4:09-ap-01447-JMM |
| LUCY SANTA CRUZ, Plaintiff | Case # 08-10544-TUC-JMM |
| vs. | |
| U.S. BANK, N.A., TRUSTEE OF MBS TRUST, Defendant | **DEBTOR'S COMPLAINT TO QUASH NOTICE OF SALE, FOR QUIET TITLE, TO REMOVE CLOUD UPON TITLE, FOR DAMAGES ON MULTIPLE THEORIES, OBJECTING TO PROOF OF CLAIM AND FOR DECLARATORY JUDGMENTS** |
| WELLS FARGO BANK, AS MASTER SERVICER, CUSTODIAN AND TRUST ADMINISTRATOR FOR THE MBS TRUST, Defendant | |
| HOMEQ SERVICING CORPORATION FKA TMS MORTGAGE, INC., dba THE MONEY STORE, Defendant, and | Chapter 13 |
| MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), Defendant | |
| EVERBANK, Defendant | |
| JOHN AND JANE DOES, INDIVIDUALS, CORPORATIONS, AND ANY OTHER FORM OF LEGAL ENTITY  1 THROUGH INFINITY, unknown Defendants | |

## INTRODUCTION, JURISDICTION AND VENUE

LUCY SANTA CRUZ, Plaintiff, files this Debtor's Complaint to Quash Notice of Sale, for Quiet Title, to Remove Cloud Upon Title, for Damages on Multiple Theories, Objecting to Proof of Claim and for Declaratory Judgments against U.S. Bank, N.A., Trustee of MBS Trust, Defendant, Wells Fargo Bank, as Master Servicer, Custodian and Trust Administrator for the MBS Trust, Defendant, HomEq Servicing Corporation fka TMS Mortgage, Inc., dba The Money Store, Defendant, and Mortgage Electronic Registration Systems, Inc. ("MERS"), Defendant, John and Jane Does, individuals, corporations, and any other form of legal entity 1 through Infinity, unknown Defendants.

The main Chapter 13 case was commenced by the filing of a petition on 08/14/2008. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§157, 1334, 1331, 1337, as well as the specific grants of federal court jurisdiction under the federal laws represented by TILA, RESPA, HOEPA, the Securities Act of 33, the Wire Act, the Mail Fraud Act, Bank Fraud, and RICO, as this is a civil action arising under the laws of the United States. This Court has supplemental jurisdiction of the state law causes of action asserted herein pursuant to 28 U.S.C. § 1367(a) as these claims are so related and so inexorable intertwined to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution, and B.R. 7001, et seq, and B.R. 3007. **Pursuant to B.R. 3007(b), an Objection to Claim may be added to or filed as an Adversary Proceeding**. Jurisdiction of this court for the pendent claims is authorized by B.R. 7018 and F.R.C.P. 18(a)(b). Venue is appropriate in this district pursuant to 28 U.S.C. §1408 and 1409. This matter is a core proceeding. A substantial part of the events or omissions giving rise to the claims occurred in this District.

**BRIEF AND ITS EXHIBITS INCLUDED AS PART OF THIS COMPLAINT**

The Brief of all Issues Involved including Securitized Mortgages, and the Exhibits Attached thereto is included herein as though said Brief were set forth herein at length and all Exhibits were attached hereto. Said Brief is served with this Complaint.

**ADVERSARY NO BAR TO PLAN CONFIRMATION**

The Plan in this case may be confirmed without waiting for the resolution of this adversary complaint. The Trustee does not waive any rights that it may be later determined to have with respect to excess value above maximum exemption value of the homestead as to property of the estate. Debtor cannot complete this Complaint by setting forth all claims and defenses until discovery is completed, due in large part to the fact that the mortgage finance industry and all of its intermediary parties and investment bankers that set up securitization of mortgages arranged for more than one private record keeping systems which keep track of the sales and ownership on Notes and whether they have been securitized, thereby having become owned by a MBS Trust Pool and Tranche.

**PROPERTY AND DEED OF TRUST IN QUESTION**

The Property in question ("Property"), is Debtor's residence and has been claimed as exempt and is legally described as follows:

LEGAL DESCRIPTION OF DEBTOR'S REAL PROPERTY RESIDENCE:

LOT 12 BLOCK 15 WESTERN HILLS # 2 SUBDIVISION PIMA COUNTY RECORDER BOOK 10 PAGE 8 OR AS MORE COMMONLY KNOWN AS 3233 S NACO VISTA TUCSON AZ 85713

The market value of the property was $40,000.00, pursuant to a professional appraisal by a Certified Residential Appraiser on April 3, 2009, and the value of the property continues to decline extremely rapidly. A copy of the appraisal is available to any

creditor by email upon request.

The Primary Deed of Trust in question ("DOT") was recorded April 16, 2007, Pima County Recorder Docket 13034, Page 3312.

The best evidence at available to Plaintiffs at this time is that the Note in question was pooled into an MBS Trust for which U.S. Bank N.A. is the Trustee, described as follows:[1]

> The MASTR Adjustable Rate Mortgages Trust 2007-HF2, Mortgage Pass-Through Certificates (the "Certificates"), that were issued pursuant to a pooling and servicing agreement, dated as of July 1. 2007 (the "Agreement"), among Mortgage Asset Securitization Transactions, Inc. as depositor (the "Depositor "), DES Real Estate Securities Inc. as transferor ("UBSRES"), Wells Fargo Bank, as master servicer, custodian and Trust Administrator (the "Master Servicer", the "Custodian " and the "Trust Administrator") and U.S. Bank National Association as trustee (the "Trustee"). The Certificates evidence in the aggregate the entire beneficial ownership interest in a trust fund (the "Trust Fund"), consisting of a pool of mortgage loans (the "Mortgage Pool") of conventional, one to four family, adjustable rate and fixed rate, first lien mortgage loans having original terms to maturity up to 30 years (the "Mortgage Loans "). The Mortgage Pool consists of Mortgage Loans having all aggregate Stated Principal Balance of $615,259,044.85 as of July 1, 2007 (the "Cut-off Date "). The Mortgage Loans were purchased pursuant to the Mortgage Loan Purchase Agreement, dated July 30, 2007, by and between UBSRES and the Depositor (the "Mortgage Loan Purchase Agreement").

## DEFENDANTS

The lender, pursuant to the Deed of Trust on record is: "Lender" is Everbank. Lender is a federal savings association organized and existing under the laws of the United States of America. Lender's address is 2122 E. Highland Avenue, Suite 425, Phoenix, AZ 85016.

---

[1] But the Note could have been pooled into a different MBS Trust for which U.S. Bank N.A. is the Trustee. We don't know for certain because of the prevailing, and arguably illegal, system of keeping such information secret, including but not limited to, the MERS company policies.

Said Defendant can be served through Robert M. Clements, Chairman & Chief Executive Officer, Everbank Corporate Headquarters, 501 Riverside Avenue, Jacksonville FL 32202. Said Deed of Trust also states,

> The beneficiary is MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), (solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns). MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026.

Records from the Official Arizona Corporation Commissions Website showing Mortgage Electronic Registration Systems Inc ("MERS"), showing that MERS was dissolved administerially and is ineligible to reapply in the State of Arizona until after 12/31/2034. Bur MERS can be served through its President and CEO, according to its public website is R. K. Arnold, as follows: "R K Arnold President & CEO Mortgage Electronic Registration Systems Inc PO Box 2026 Flint MI 48501·2026."

The loan servicer is apparently HomEq Servicing Corporation, which can be served through its Statutory Agent, Corporation Service Company 2338 W Royal Palm Rd Ste J, Phoenix, AZ 85021. The attorneys for Loan Servicer in this bankruptcy case are Mark S. Bosco / Leonard J. McDonald Tiffany & Bosco 2525 East Camelback Road Suite 300 Phoenix, Arizona 85016.

The Note has been securitized into a MBS Trust, for which U.S. Bank is the Trustee. When U.S. Bank is the Trustee for an MBS Trust, service of process can be had upon Michael A. DeBois, General Counsel, Corporate Trust Services, U.S. Bank Trust Legal, EP-MN-WS4L, 60 Livingston Ave., St. Paul, MN 55107.

Wells Fargo Bank, N.A., is the Master Servicer, Custodian and Trust Administrator for the MBS Trust into which the Note has been securitized, which can be served through

its Statutory Agent, Corporation Service Company 2338 W Royal Palm Rd Ste J Phoenix, AZ 85021.

Plaintiff is ignorant of the true names and capacities of defendants sued herein as JOHN DOES I through X (unknown number of unknown parties), inclusive, and therefore sues these defendants by such fictitious names. Plaintiff will amend this complaint to allege their true names and capacities when ascertained. After Plaintiff discovers the parties that ought to be reasonably included as a named Defendant, Plaintiff will Join them to this proceeding. Debtor also intends to possibly provide Service of Summons and Complaint to the remaining unknown Defendants by Service by Publication after Motion Upon the Court.

**WRONGFUL FORECLOSURE AND EMERGENCY RELIEF REQUEST TO QUASH THE SUBSTITUTION OF TRUSTEE AND THE NOTICE OF TRUSTEE'S SALE AND TO REQUIRE FORECLOSURE TO BE PERFORMED BY COURT PROCEDURE**

**PROBLEMS WITH THE PROCEDURE, EVIDENCE, NOTES, ENDORSEMENTS AND ETCETERA**

Michael Bosco, Jr., was purportedly appointed as Substitute Trustee by MERS, on June 1, 2009, and they are the parties purporting to have the authority to offer Plaintiff'S home for Non-judicial foreclosure sale pursuant to the Deed of Trust.[2] Defendant MERS is identified on the Deed of Trust not as a Trustee but as a nominal Beneficiary only. MERS was acting out of the scope of its authority in appointing Bosco as Substitute Trustees with the authority to foreclose on Plaintiffs' home. But even if it would have had the authority to do so, MERS purports to be acting on behalf of Everbank as of June 1, 2009. But Everbank has not held an interest in the Note since 2007, because the Note was

_____

[2] Exhibit A are the Substitution of Trustee and the Notice of Trustee Sale.

securitized. Between April and July of 2007, the ownership of the Note was transferred from Everbank to Mortgage Asset Securitization Transactions, Inc. as Depositor, and then to DES Real Estate Securities Inc., as Transferor, and then to U.S. Bank, N.A., as Trustee of MBS Trust pool. In this case, the documents presented to the Court present the appearance that the original note holder, Everbank, continued to own and hold the note. But the Note has not been produced, not even a copy thereof. Even if Defendant does still hold the Note, which Debtor denies, it has been made to intentionally appear that the Note was never securitized. Additionally, Joyce Nelson swears under penalty of perjury in the Substitution of Trustee that she is the Assistant Secretary for MERS on June 1, 2009.[3] But she also swore under penalty of perjury in the Substitution of Trustee that she was the Assistant Secretary for Barclays Capital Real Estate, Inc., dba HomEq Servicing on July 30, 2008.[4] Therefore, both the appointment and the Substitution of Trustee are null and void.

On the other hand, if on the contrary, ownership of the Deed of Trust remained with Everbank until June 1, 2009, there was an intentional separation of ownership of the Note and Deed of Trust by the Participants, and when this occurs with intention, the Note is rendered unsecured by the Debtor's Property and the Deed of Trust is a nullity. See Brief incorporated herein by reference. This is very likely because intent can easily be proven by reference to the conduct of the Participants. The owners of the Note are the Investors in the MBS Trust and their security in the event of default was one or multiple credit

_____

[3] See Exhibit A.

[4] See Exhibit B.

enhancements used in the establishment or otherwise connected with the MBS Trust, such as Credit Default Swaps, other insurance, other guarantees, special pooling and service agreement terms, cross collateralization provisions, bond indenture terms, over-collateralization provisions, description of tranches, buy-back provisions, call provisions and reserves, or funding security sources not planned in advance, such government funds, including but not limited to TARP funds, Federal Reserve loans or gifts, or U.S. Department of Treasury loans or gifts.

**ARIZONA STATUTES ESTABLISHING CAUSES OF ACTION FOR DAMAGES AND MAKING IT CLEAR THAT NON-JUDICIAL FORECLOSURE IS INAPPROPRIATE[5]**

Debtor insists that the original of any note that Defendant claims entitlement to payment and all original endorsements and allonges be produced in Court. Debtor denies the authenticity of the Note and denies the validity of the signatures thereon. Debtor denies the authority of any signatories. Debtor alleges that the Note is non-negotiable. Debtor alleges that Defendant is not a holder in due course. Debtor alleges that it is more likely than not that the obligation has been discharged in whole or part because of payment by one or more third parties. Debtor alleges that if there is any obligation still owed on the Note, that it is owed to one or more unknown parties that purchased Mortgage-Backed Securities ("MBS"), and that these purchasers were the actual Investors ("Investor") that provided the funding for Debtor's loan, and that Debtor's obligation has become equitable only and unsecured. Defendant is pretending to be a holder in due course, but cannot be because it is the investors that are only real party in interest. **Plaintiff asks that**

_____

[5] X C includes ARS §§ 33-404 to 33-820 that are relevant and cited below .

**Defendants, including MERS be compelled to immediately turnover to the Court the printouts on its website available to itself and any member, including but not limited to the MIN Summary and Milestone history of the history of the Note, Deed of Trust, Servicing Rights and other information on its system that pertains to the Property and the Primary Loan in Question.**[6] One of the settled principles is that the beneficiary of the deed of trust is the party to whom the debt is owed. A mortgagee or a beneficiary to a deed to trust is entitled to only one satisfaction of his debt. A deed of trust typically secures a debt owed the beneficiary. The Trustee has failed to list any or all of the real beneficiaries in the Notice of Trustee Sale. **Plaintiff sues to quash the Substitution of Trustee** and the Notice of Trustee's Sale and to **require foreclosure to be performed by Court procedure rather than through the Deed of Trust procedure**, due to wrongful use of Deed of Trust procedure for foreclosure, instead of Court procedure, and sues for damages under Arizona State statutes, pertaining to mortgages and foreclosure, pursuant to: ARS § 33-721 (Foreclosure of mortgage by court action), because the Trustee was improperly appointed or substituted and not all of the beneficiaries were listed or included, in violation of provisions of Title 33, Chapter 4, including: ARS §§33-801(8) (Definition of "Trust Deed"); 33-802(B) (failure to name all beneficiaries in properly assigned deed of trust); and 33-804 (improper appointment of successor trustee by beneficiary); 33-807 (only proper beneficiary can decide to foreclose by Trust Deed procedure); 33-808 (improper Notice of trustee's sale pursuant to subsection (C)(5), because proper beneficiary not named and trustee not properly qualified); 33-820 (the trustee did not have a right to rely

---

[6] See Exhibit A to Brief, which is an example of a MERS printout.

on information presented by beneficiary, because trustee had knowledge of the actual facts).  Pursuant to ARS §33-404(A), ( C) and (E), the Trustee is required to name the beneficiaries for whom he acts in every deed executed, and is required to record a notice of a change of beneficiary within 30 days after receiving actual knowledge of change of beneficiary, and any conveyance that does not comply is voidable.

Pursuant to ARS §33-420,

A. A ... claim [of an] encumbrance against real property ... recorded ... **contains a material misstatement or false claim or is otherwise invalid** is liable to the owner ... **not less than five thousand dollars**, or for treble the actual damages ... **and reasonable attorney fees** and costs of the action.

B. The owner ... real property may bring an action ... **to immediately clear title to the real property** ... on the ground that the lien ... **contains a material misstatement or false claim or is otherwise invalid**...

C. A person shall be liable to the owner .... **not less than one thousand dollars**, or for treble actual damages ... **reasonable attorney fees** and costs ... if he wilfully refuses to **release or correct such document of record within twenty days** . . .

D. A document purporting to create ... a lien or encumbrance against real property not authorized by statute, judgment or other specific legal authority is **presumed to be groundless and invalid**.

E. A person purporting to claim an interest in, or a lien or encumbrance against, real property, ... **contains a material misstatement or false claim or is otherwise invalid** is guilty of a class 1 misdemeanor.

Debtor therefore sues for the sum of $5,000.00 against MERS, and HomEq, plus reasonable attorney fees in the amount of $2,500.00, to be paid in addition to those fees the undersigned is receiving through the Chapter 13 Plan, since this action should not have been necessary in an ordinary Chapter 13 case.  Receipt of this Complaint should also be considered the commencement of the 20 day time frame under subsection C.  Debtor also

asks that this subsection B should be added as additional grounds for granting the Debtor clear title to the property, and Debtor asks that the Court grant such relief.

Additionally, Debtor also asks for affirmative relief in the form of being presented with the identities, including all contact information of the real beneficiaries, which are the investors in the MBS Trust, as well as a complete accounting of what remains owed to said Investors after deducting amounts they have received from 3rd party sources, as defined herein, pursuant to ARS §33-715.

Debtor asks that the Court deem foreclosure by Deed of Trust inappropriate and that only judicial foreclosure that insures that all parties that might have competing claims to the property and to payment from Debtor on account of the Loan in question, have at least notice by publication and an opportunity to appear.[7] Debtor asks that the costs of service by publication be included in the costs awarded to Debtor pursuant to the above statutes.

**SUMMARY OF CAUSES OF ACTION**

In addition to the relief requested above, Debtor asks for one or more Declaratory Judgements, including: 1) lack of standing on the part of any Participant or other party. 2) The Note was rendered non-negotiable upon being Securitized. 3) Securitization rendered the Note incapable of being held by a Holder in Due Course. 4) Securitization rendered the Note unsecured. **That upon failure to produce the original Note in Court, that Debtor be Declared to have Complete release of obligation to pay on lost note, because under the UCC, if a Note is lost and there is no party entitled to the rights**

---

[7] See Exhibit D, Supplemental Findings by Debtor's Expert That Non-judicial Foreclosure Inappropriate

**of a Holder in Due Course, Debtor is not required to pay on said Note.**[8]  Because the law is so definitive on this matter, having the original Note produced is a **fundamental right of Debtor, and not a merely discretionary evidentiary matter**.  5)  That the underlying obligation has been Discharged by payment to owner of Note by 3rd party sources on behalf of the Note.  6) And any others that may aide in a just adjudication of the issues raised herein.

Plaintiff sues for Quiet Title and to Remove Cloud Upon Title, including the Claim that the loan has become unsecured and that no known Participant has even an unsecured claim.  In this regard, Plaintiff also Objects to the Proof of Claim that claims to be secured by the Primary Deed of Trust in question.

Plaintiff sues for monetary damages, costs and Attorney fees pursuant to statutes cited in the above section requesting **Emergency Relief to Quash the Substitution of Trustee and the Notice of Trustee's Sale  and to Require Foreclosure to Be Performed by Court Procedure**.

Plaintiff Objects to the Proof of Claim filed on the Primary Mortgage.

This lawsuit alleges conversion and conspiracy to commit conversion.

This lawsuit alleges the right to rescind the payment obligation because of securities fraud, using the Plaintiff to create and sale an unregulated security without the knowledge or permission of Plaintiff.

This lawsuit may include violations of Arizona Consumer protection laws, and other

---

[8]  A.R.S. § 47-3305 ( C).  Also see brief.

state common law causes of action for Actual Fraud, Constructive Fraud, Fraud in the Inducement, Fraud in the Factum, Fraud in the Execution, Breach of Contract, Gross Negligence, Lender Negligence, Willful and Reckless Negligence, Negligent Acceptance, Negligent Training, Conspiracy, and others, listed in the incorporated Brief, and otherwise.

This lawsuit may include violations of several Federal and state laws, the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2607 et seq. and the implementing Regulation X ("Reg. X"); the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 et seq. and the implementing Regulation Z ("Reg. Z"); the Federal Mail Fraud Act, 18 U.S.C. § 1341 (the "Mail Fraud Act"); the Federal Wire Act, 18 U.S.C. § 1343 (the "Wire Act"); Bank Fraud 18 U.S.C. §§ 1010, 1014, 1344 ("Bank Fraud"); the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq.; the federal Securities Acts of 1933 and 1934, 15 U.S.C. § 77a et seq. (the "33 Act"), and 15 U.S.C. 78a et seq (the "34 Act"), and Rules promulgated thereunder by the Securities and Exchange Commission ("SEC"); Arizona State Securities Violations, pursuant to Chapter 12, A.R.S. §44-1801; and for potential violations of other state statutes.

**SUMMARY OF THE FACTS AND LAW**

The true story is that a few elite persons with the position and power to pull strings, Wall Street Investment Bankers (that is the "they"), purchased multiple Credit Default Swaps ("CDS"), on the same loans, and had the power to make sure that the MBS Trusts would fail, due to a plethora of intentionally bad loans being included in the Pools, except for the uppermost tranches that were populated by their friends and high powered connections. Because of the deregulation of CDS, which in substance are bets that the MBS Trusts would fail, even non-investors could and did purchase multiples CDS on the

same Notes, Tranches and Pools.  Everyone played along, because the fees on the transactions were so much higher than normal, and there is a natural tendency to believe that big time Bankers and Wall Street types should be followed, because they were the establishment.  They must know what they are doing.  And this must be the way things are done.  When the lure of huge fees and following the leader motivations didn't work they resorted to more forceful measures, such as the use of various arm twisting techniques, against Underwriters and Appraisers, for example, such as threatening their careers.  They made their money on defrauding investors in the initial stages by pocketing away offshore a great deal of money that was supposed to be used to make or purchase loans, and part of this extra money was used for the aforementioned up-front exorbitant fees.  MERS was created so that portions of transactions could be kept off book, and so that the same note and the same property could be pledged to multiple parties without anyone being able to track this, because the MERS records were confidential.  A few elite persons that knew how to timely game the system could and did purchase multiple CDS, or bets on failure.  Then they set about to insure that they would fail, by widespread high pressure predatory lending.  And everyone in the industry just followed along.  Those that are enforcing mortgages now, are Servicers for the most part, and are doing so with an industry-wide tacit agreement that each Servicer can pocket the proceeds of payments and foreclosure sales and not forward them on to the Investors.  Individual employees and their attorneys are often not aware of this, but they have been coming into Court for years, misleading Judges and Debtors that the company they work for or represent is the Real Party in Interest, when they are only the Servicer, and showing up with documents that make it look like there has been a simple endorsement of interest as shown in the documents from the

Originator, the "Lender" as listed in the Deed of Trust, and then arguing that all they have to do is present a colorable claim to get a motion for relief from stay granted. This is collusion and conspiracy to commit fraud, if they either know the real party in interest is a MBS Trust, or that the note was at one time included in such a Trust Pool, or failed to do a reasonable amount of due diligence in questioning their client.

Herein "**Participants**" refers to the entities involved in the MBS Trust process, but does not include the only real parties, the Borrower and the Investor. The Participants are mere intermediary and most do not really provide a service. They take fees and assist in the running of scams. Different words are used in different Trust documents for the name of the Participants. Some of these Participant titles include: the "Originator," called the "Lender" in the Note and Deed of Trust, who will sometimes work through a "Loan Broker." The Originator held the Note for days at most, but almost always remains the secured party, according to the documents of record with county recorders. Other names of Participants are: the "Sponsor;" the "Seller;" the "Underwriters;" the "Advance Funding Investment Bank;" "Depository Banks;" "Warehouse Lender;" "Depositor;" the "Issuer," who issues MBS Bonds or Certificates;" "Trustee" of MBS Trust; "Custodian of Certificates" for MBS Trust; "Master Servicer;" "Servicer;"and "Sub-Servicer."

When a Note becomes "Securitized," a name for the process of including it into a MBS Trust, it immediately becomes non-negotiable, because of the terms that govern treatment of the Note as to the **only** real parties in interest, the Investors in MBS Certificates or Bonds. It also immediately makes it impossible for their to be a Holder in Due Course. Also, when Securitized, the Note becomes unsecured by the Debtors

residence, because there is an intentional separation of ownership of Note from Deed of Trust, by Participants in the Securitization process. Also, the Note has generally become discharged by payment to the Investors on behalf of the Note by 3rd party sources. It is virtually impossible to identify the real parties in interest. There is no one to pay, other than Servicers who would pocket the money without having paid value for it. Though Servicers or Trustees for MBS Trusts sometimes attempt to claim they have authority to act on behalf of the Investor real parties in interest, if one bothers to read the founding documents of the MBS Trust in question, it is clear that they do not have this authority. There is no Participant or other Party that has Standing or is the Real Party in Interest. This ironic situation was set up intentionally by the masterminds that planned the entire scheme, so as to be able to conceal the various forms of fraud they committed, including: defrauding Borrowers, such as Plaintiff, and Investors; to evade or assist other persons in evading taxes owed to local, state and federal governments; to violate state and federal securities laws; and to commit what would amount to insurance fraud; and fraud of the U.S. Government when accepting TARP funds in bad faith, since they intentionally performed the aforementioned acts with the intention that the MBS Trusts would fail, and that they would receive immense sums from CDS payouts.

Plaintiff is informed through expert testimony, research and examination of facts, and believes and thereon alleges that, at all times herein mentioned, each of the individuals employed by any and all Participants sued herein, and all Participants, were actual or defacto agents and/or employees, and/or parent or subsidiary, and/or intentional mutual accomplice in an ongoing scheme, joint enterprise, common purpose, aider and abetter, of each of the other Participants and each such individual employee was at all times acting

within the purpose and scope of such agency and employment, and does not include Investors, except for the possibility that there are some Participants, probably invested in the upper tranches of the MBS Trust, or were otherwise a knowing conspirator to: defraud Plaintiff and Investors; to evade or assist other persons in evading taxes owed to local, state and federal governments; to violate state and federal securities laws; and to commit what would amount to insurance fraud, and fraud of the U.S. Government when accepting TARP funds.

**STANDING, REAL PARTY IN INTEREST AND REQUEST THAT MERS RELEASE INFORMATION**

Debtor denies that Defendant is the real party in interest. Debtor does not deny borrowing to purchase their property, nor that they signed a Note and Deed of Trust, nor that they are not current on payments pursuant to the original terms thereof. But even if Defendant produces the original Note in Court and presents itself to be the putative holder, Debtor alleges that Defendant is owed no money whatsoever by Debtor, because the Note is own by the Investors, if any amount remains not discharged by 3rd party payments, and Defendant never invested a single dime that was loaned to Debtor, nor was there any consideration paid by Defendant to purchase the Note, and also because of other claims and defenses described herein. Debtor alleges that if further money is owed to any party, that another person or entity is the actual Investor and the only person or entity that can be entitled to payment, but that the obligation to them is not secured by Debtor's residence. To find that Debtor is obligated to Defendant would subject them to the potential of multiple liability for the same obligation. Debtor alleges that if the obligation to the actual investor has not been discharged by third party security guarantees, that Debtor possesses claims

and defenses against said party as discussed herein.  The Identity of true Investors is necessary to prevent potentially subjecting Debtor to multiple collection claims on the same loan.  Additionally, the MERS system, or any secret system of transfer and ownership of debt, by definition subjects Debtors to the potential of multiple collection claims on the same loan and creates a cloud upon title.  Debtor asks that final hearing on this matter pending full and complete response to Debtor's discovery requests.

**SPECIFIC UCC ALLEGATIONS**[9]

The Note was rendered non-negotiable upon being Securitized.

Securitization rendered the Note incapable of being held by a Holder in Due Course.

Securitization rendered the Note unsecured.

Validity of signatures on the Note in question, all endorsements, and on assignment of Deed of Trust are specifically denied.

Debtor is entitled to a complete release of obligation to pay on lost note when party seeking to enforce is not a Holder in Due Course.

That the underlying obligation has been discharged of indebtedness because of payment by 3rd party sources under UCC.

**OBJECTION TO CLAIM**

On 11/6/2008, U. S. Bank N.A. as Trustee filed its Amended Proof of Claim, listed in the Court's Claims Registry as Claim # 9, allegedly secured by a lien secured by Debtor's Residence, in the secured amount of $168,755.82.[10]  Debtor alleges that said claim is first

---

[9]  See Sections in Brief pertaining to the UCC.

[10]  Said Proof of Claim is attached hereto as Exhibit E.

of all invalid, because no money is owed to said party.  Said party has no standing and is not the true party in interest.  Debtor's Obligation, if any remains, is unsecured.

**QUIET TITLE AND REMOVAL OF CLOUD**

Plaintiff is and at all times herein mentioned the owner and entitled to exclusive possession of the Property.  Plaintiff is informed and believes that one or more Defendants claim an interest in the property adverse to plaintiff herein. However, the claim of said Defendants are without any right whatsoever, and said Defendants have no legal or equitable right, claim, or interest in said property.  Plaintiff  therefore seeks a declaration that the Defendants be declared to have no estate, right, title or interest in the subject property and that said Defendants, each be forever enjoined from asserting any estate, right, title or interest in the subject property adverse to plaintiff herein.

Plaintiff further seeks a declaration that the title to the subject property is vested in Plaintiff alone and that no estate, right, title or interest in the subject property exists in any other party, and that all other person be forever enjoined from asserting any estate, right, title or interest in the subject property adverse to plaintiff herein.


**CONVERSION, ATTEMPTED CONVERSION AND CONSPIRACY TO COMMIT CONVERSION**

There has been well documented widespread fraud and abuse perpetrated by Investment Bankers between 2001 through 2007, and that all participants in Debtor's loan were knowing accessories, and that fraud after the fact continues to this day, and that this scheme was originally conceived and prepared for in the mid to late 1990's.  All the allegations contained herein are based in fact and supported by the opinion of Plaintiff's

experts.   The Note in question was rendered  non-negotiable and that the holder or owner

cannot be a holder in due course.   Debtor alleges that Mortgage Companies, Servicers and

Other Participants have perpetrated fraud on the Bankruptcy Courts for years, by filing

Proofs of Claim and Motions for Relief from Stay, likely without the knowledge of many of

the Attorneys representing them in Bankruptcy Court, and without the knowledge of many

of their employees, by misrepresenting themselves to be legitimate holders with standing

and the right to enforce the notes and deeds of trust.   They have also engaged in

conversion of mortgage payment and foreclosure proceeds, by retaining the same or

collaborating in the wrongful retention by others.   To reiterate, the only party ever entitled

to payment and other proceeds from a securitized mortgage are the Investors.   All of this

was done in collaboration with the investment bankers that masterminded the entire

scheme to the detriment of the borrowers and the Investors.   The reason that conversion

by mortgage companies, servicers and other participants was enabled by investment

bankers was because it was their intention that the MBS Trusts would fail, and to make it

so that the fraud perpetrated on the Investors would be kept hidden, and so that they could

obtain payments from 3rd party sources based on loan defaults.   Each of the participants

in the securitization process had full knowledge of what was occurring, and this amounted

to a common scheme of collusion, collaboration, aiding and abetting and joint venture,

completely eliminating the validity by any participant to claim good faith and absence of

knowledge, necessary for holder in due course status.   When all the complexity and

confusion is seen through, the simple fact to remember is that the only real parties to a

mortgage loan transaction are the Investor (the real source of the money that funded the

loan) and the Borrower.   All other intermediary participants in the securitization process

were superfluous entities without any value of their own placed at risk, but each of which took a large fee at a minimum. The fees were far larger than normal and the volume of loans being processed were also far greater than normal is this situation amounted to de facto incentives to look the other way and keep the process continuing. The actual investors are the only parties that would have any real standing to make a claim on a note or deed of trust, because they are the only parties that provided any loan funding, though by the time they are run through the securitization process these notes are really unsecured as a matter of law. Servicers such as HomEq have been pretending to be holders in due course and has been collecting payment proceeds and foreclosure proceeds and wrongfully converting the same to themselves. The fact is that the notes were rendered non-negotiable because of the way that they were pooled into Real Estate Mortgage Investment Conduits ("REMIC"), the MBS Pool Trusts, which by law are not permitted to own any assets, and by the way mortgage payments and funds from other sources passed through the REMIC, not with payments on any individual note being applied to the Investor that funded the particular loan, but by payment first to the top tranche and then downward, regardless of which tranche funded the note upon which said payment was made. This rendered all the notes non-negotiable, with there being no holder in due course. The process and its aftermath has also rendered the notes unsecured. These ironic results were not mistakes but were planned years ahead of time when Wall Street Investment bankers sought and obtained the deregulation of Credit Default Derivatives, which made it legal to bet against the success MBS Trusts by purchasing multiple insurance policies on them, and furthermore it was not necessary for the purchasers of these multiple Credit Default Swaps to have had any funds at risk, meaning

they did not have to actually own any of the MBS.  There have been at least three types of fraud perpetrated by those that created the MBS Trusts.  The first type of fraud was the creation of these Trusts with the specific intention that they fail included, but not limited to, conspiracy to engage in:  predatory lending, appraisal fraud and underwriting fraud.  The second type included the intentional misrepresentation of the strength of the underlying loans to investors, which is securities fraud.  This has lead to 2999 issuers of securities having been named in federal class action securities fraud lawsuits since passage of the Private Securities Litigation Reform Act of 1995, as of August 25, 2009.  Stanford Law School Securities Class Action Clearinghouse, http://securities.stanford.edu/.  The third type of fraud has been the aiding and abetting of Servicers of MBS Trusts to convert mortgage payments and foreclosure proceeds to themselves.  The reason for aspect of the overall fraud conspiracy was so that the owners of credit default swaps and potential payees of funds from other sources could claim that the MBS Trusts had failed.  This is also one of the reasons for the intentional separation of the ownership of notes from deeds of trust.  The only way this was made possible was because of the secretive MERS system which allowed participants access to information pertinent to transfer of ownership interests and rights, but kept it confidential from the two defrauded parties, Investors and Borrowers.

Plaintiffs did not receive any correspondence from Lender as required by the contract and law that Lender, nor any subsequent owner or holder that it had assigned, transferred, or sold Plaintiffs' Promissory Note, and their interest in Plaintiff's home through the various Participants with the preplanned specific intention that the Note be owned by the MBS Trust.  Defendant, HomEq, after becoming Servicer lied to Plaintiffs and claimed to have purchased the ownership of the Note.  Upon information and belief, HomEq has

converted funds paid for mortgage payments to itself wrongfully and intends to convert the proceeds of the foreclosure to itself. Additionally, other Defendants may intentionally and/or unintentionally, convert payments and/or foreclosure proceeds.

**VIOLATIONS OF THE SECURITIES EXCHANGE ACTS OF 1933 AND 1934 AND ARIZONA SECURITIES LAWS ENTITLING PLAINTIFF THE RIGHT TO RESCIND THE OBLIGATION TO PAY**

This lawsuit alleges the right to rescind the payment obligation because of securities fraud, using the Plaintiff to create and sale an unregulated security without the knowledge or permission of Plaintiff. The way the loans to borrowers were financed had the effect of turning the borrowers into the issuers of unregulated securities, as a matter of law, contrary to the Truth in Lending Act, and to the Securities Exchange Acts of 1933 and 1934. They were advised that the value of their properties would continue to rise and that they could simply refinance when no longer able to afford to make the payments. They were advised that the ability to refinance was assured because continued increase of property values was a certainty. Therefore, they were sold the promise of a passive return on investment. federal Securities Acts of 1933 and 1934, 15 U.S.C. § 77a et seq. (the "33 Act"), and 15 U.S.C. 78a et seq (the "34 Act"), and Rules promulgated thereunder by the Securities and Exchange Commission ("SEC"); Arizona State Securities Violations, pursuant to Chapter 12, A.R.S. §44-1801.

**FEDERAL MAIL FRAUD ACT, FEDERAL WIRE ACT, BANK FRAUD AND RICO**

All the above acts of fraud and conversion were done as part of a conspiracy, knowing collusion, aiding and abetting, and the knowing joint participation in a common and

regular course of business practices amounting to fraud and conversion, and Bank Fraud.[11] By each Participant in the securitization process knowingly participating as they did, including all Defendants, except for the unknown Defendants, each is liable for all actions of every other conspirator.[12] Mortgage statements, notices, payments, processes were sent by mail or wire.[13]

**PREDATORY LENDING, DECEPTIVE AND/OR NEGLIGENT LENDING AND SERVICING PRACTICE, TILA, RESPA, HOEPA AND RELATED CLAIMS**

Debtor was over seventy (70) years old at the time of the transaction and was on a fixed income. The documents indicate that dates were altered on documents from their actual dates. The HUD-1 closing date was listed as 4/13/07. The signature on only the HUD-1, which was the Final Settlement Statement was dated 4/16/07. The Notarization to the Deed of Trust was sworn to be 4/12/07. The Deed of Trust was recorded 4/16/07. The borrower was not provided the required Initial Federal Truth In Lending Act Disclosure (TILD), nor Good Faith Estimate (GFE). Not until closing was the borrower provided with a Final Truth in Lending Disclosure, which was back-dated to 4/11/07. Pursuant to 12 U.S.C §226.18 and 226.19, the lender shall provide the borrower with an accurately disclosed estimate of the cost of credit, terms of the credit and settlement costs associated with obtaining the credit. These disclosures must be provided within 3 days of the

---

[11] Bank Fraud 18 U.S.C. §§ 1010, 1014, 1344 ("Bank Fraud").

[12] Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq.

[13] Federal Mail Fraud Act, 18 U.S.C. § 1341 (the "Mail Fraud Act"); the Federal Wire Act, 18 U.S.C. § 1343 (the "Wire Act");;

application.  Additionally, Federal Truth in Lending statutes require additional disclosures relating to mortgages that are not standard fixed rate fully amortizing loans, particularly with regard to adjustable rate mortgages (ARMs), interest only (IO) and negative amortizing mortgages (NegAM). The disclosure must contain specific wording as prescribed by law and must be disclosed within three (3) days from application.  Borrower was not provided with any of these disclosures prior to closing.  At Closing she was provided with a final Settlement Statement, the U.S. Department of Housing Settlement Statement HUD-1. This document lists a "Settlement Date" of 4/13/07, and the signature thereon was dated 4/16/07.  Additionally, all other loan documents are dated 4/11/07.  The Final Settlement Statement HUD-1 reflects a "origination fee" of $1,323.00, a " yield spread premium" of $1,450.00, a "processing fee" of $495, "appraisal Fee" of $350 and an "application fee" of $495 paid to Approved Home loans as well as a "processing fee" paid to Everbank of $575 that were not properly disclosed to the borrowers.  Consequently, fees of $4,688.00, totaling over 3.5% of the loan amount were not properly disclosed to the borrower.  The absence of a timely and proper Good Faith Estimate(GFE) and Initial Federal Truth in Lending Disclosure (TILD) when combined with the backdating of all pertinent documents at closing (dated 4/11/07) indicate the terms of the subject loan were never properly disclosed to the borrowers until closing,  additional settlement charges associated with this transaction were not properly disclosed to the borrowers.  The failure to properly disclose the effective cost of the mortgage transaction is a strict liability matter in violation of TILA § 1640(a), as Plaintiff fell prey to what is now commonly known as predatory lending practices and toxic loans.  Civil liability under RESPA is 3X $4,688.00, plus applicable statutory damages plus attorney fees and other 3rd party costs.  See also 24 C.F.R. §

3500.7(b).

Please find attached FM, reflecting average mortgage rates as of April 12, 2007 in the Southwest US ranging from 5.93% for a 5/1year ARM (subject loan) to 6.22% for a 30 year fixed mortgage.  Putting the borrower into a mortgage at nearly of 10% APR indicates that the borrower was placed in a loan with terms less favorable that she could receive in order to escalate the fees to the Loan Broker and/or Lender.   The borrower's "fees & points" associated with the subject loan are 5X what was "reasonable and customary" at the time and their interest rate was at least 60% higher than competitive loan products, the failure to disclose the terms deprived the borrower of the ability to compare alternative credit products which is one of the primary of objectives of Federal Truth In Lending statutes and other consumer credit disclosure requirements. Further, the borrower's monthly payment at a prevailing competitive rate of 6.22% even with payment of points and closing costs would have resulted in a APR of 6.385% and been 25% lower at $8,121.00 month, inherently more affordable and less likely to default.

Mortgage Lenders have an obligation to provide a Good Faith Estimate of the Closing Costs that will be due at time of settlement as well as additional subsequent disclosures should the terms and costs associated with the extension of credit change, the Borrower was  not provided with these disclosures as required by Real Estate Settlement Procedures Act and Federal Truth in Lending statutes.

The terms of the Final TILD do not match the terms of the Adjustable Rate Note. The TILD represents two consecutive 5 year terms of fixed payments with the payment actually being lowered in the second 5 year term while the Note reflects annual only one 5 year term with annual adjustments in subsequent years after the 5 year initial fixed term.

Schedule I of the borrowers filing with the U.S. Bankruptcy Court shows the borrower(s) current Gross Average monthly income to be $2,250.00. This figure was roughly the same, if not less, at the time of the loan in early 2007 as Ms. Santa Cruz has been on fixed income for several years. Please find the Uniform Residential Loan Application, Form 1003, prepared by Interviewer Danira Marquez of Approved Home Loans. Form 1003 is unsigned and not dated, but presumably executed by the borrower at the closing. This document states the borrower's monthly income to be $7,300 per month." The Interviewer, Danira Marquez placed an inflated income amount on the Uniform Residential Loan Application Form 1003 in addition to failing to sign and date the Form 1003.

The absolute minimum Debt To Income (DTI) at the time of this transaction is 129% and further excludes other monthly recurring liabilities of the borrower for non-property obligations. Please provide a copy of the borrower's credit report used for this transaction so that the other monthly recurring liabilities at time of application can be determined. The Deceptive Lending practices stated herein have placed the borrower into a non-affordable mortgage and have, potentially placed the borrowers in a position to lose her home. Under TILA there is a presumption that the lender has violated Section 226.34 where there has been a failure on the part of the lender to verify and document their verification of the borrower(s) ability to repay the obligation. There is no DTI computation form 1008 for this transaction. A HomeEq Account statement dated 2/24/09 reflects a principal balance of $131,124.88 for "account #326536711" and the Proof of Claim filed In the pending main Bankruptcy case #08-10544 where the itemization of the claim reflects a principal balance of $158,325.25 for an account ending with the last 4 digits of "6778" which matches neither

the account number for HomeEq or the Loan number per the note and other Closing documents. The appraisal to obtain loan approval had a market value listed of $147,000.00. Based on a recent appraisal the current loan to value (CL TV) based on the disputed principal balance is between 300%-400%. Borrower/Plaintiff's Attorney had an independent professional appraisal performed, which indicated a value of $40,000.00! It does not appear that any internal underwriting appraisal review from for any Participant from loan origination through securitization thereof as no such documentation has been provided though it was requested in the Qualified Written Request. The subject property/transaction, we have reason to believe that the appraisal did not comply with basic USPAP standards. Further, our review of this transaction indicates that Mortgage Electronic Registration Systems, Inc. aka MERS is named as the beneficiary on the Deed of Trust that was recorded however the Supplemental Closing Instructions and Insurance requirements, indicates that Everbank is to be named as the beneficiary under the Property and Title Insurance policy. The Qualified Written Request on 8/31/2009 was sent by Debtor's Mortgage and Securitization Investigation and Evaluation expert, Brad Kaiser, M.B.A., Senior Compliance Manager, by Certified Mail to the Attention of the Legal Loan Compliance Department of the following: Lender, Everbank 501 Riverside Ave Jacksonville Ft 32202; Mortgage Electronic Registration Systems P.O. Box 2026 Flint, MI 48501; Servicer HomEq Servicing Corp P.O. Box 13716 Sacramento CA 95853-3716; and Non-judicial foreclosure Trustee Michael A. Bosco, Jr., Tiffany & Bosco 3rd Floor Camelback Esplanade Re: 2525 E. Camelback Rd, Ste 300 Phoenix, AZ 85016, that contained the following requests that were either completely ignored, or responded by saying the information was privileged or not relevant. This is far from unusual, but is the norm. This

kind of response is very telling that all Participants are involved and complicit in widespread

and long standing fraud as described above and in the Brief that is incorporated herein.

Their response amounts to saying that it is privileged or irrelevant who Debtor owes any

money to on the loan, and it is privileged or irrelevant whether or not Debtor's loan has

been paid off.  Yet the Participants claim by their actions that any of them have a right to

foreclose, even though none of them have loan or otherwise invested a dime.  Here are the

requests that were ignored in the QWR:

> Despite a request of any assignments between MERS, Everbank and/or any other third party not properly recorded at the local recorder's office. The naming of multiple beneficiaries may void the Deed of Trust and also may "cloud" or create an unmarketable title.

> Given the propensity of lenders to securitize mortgages during the period of this transaction and the "table funded" nature of the subject transaction we further demand that you confirm whether or not the subject loan was in fact sold and who is the current owner of the note so that we may direct our communications to the appropriate party or parties.  Additionally, we request that you disclose at this time whether the subject loan or corresponding "tranche" of the mortgage pool was covered under any credit default swap contract or pledged to any other entity as collateral in the issuance of mortgage back securities (MBS) or any other type of collateralized loan obligation (CLO) or collateralized debt obligation (CDO).

> Finally, if the subject loan was securitized we require that you provide the name of the "depositor entity" which was the source of funds for the subject loan and the "trust" entity which issued the securities, which party should also be in possession of the subject note and the specific Name and Series of the Certificates associated with the securitization of the subject loan as well as a copy of the applicable pooling and servicing agreement. Otherwise, we are requesting that you provide a sworn affidavit from the original creditor/lender in this transaction that they are still the owner of the subject note.

> Given the disbursement of billions of dollars of government bailouts, the objectives of the Federal Troubled Asset Relief Program(TARP) and subsequent US Federal Government Programs, the purchase of mortgage backed certificates by the US Treasury Department and the Federal Reserve Bank, we request full accountability and proof, combined with a sworn affidavit from you as to whether the note has been paid and the obligation

satisfied through the disbursement of Federal TARP funding or any other program funded directly or indirectly by the US Government, Federal Reserve Bank and/or the US Treasury Department. This includes the creation entities such as Maiden Lane LLC, Maiden Lane I, Maiden Lane II and Maiden Lane 111 and any other entity funded primarily by loans from the Federal Reserve Bank of New York for the distribution of funds to counter-parties of American International Group (AIG) and others.

It is imperative that in resolving this matter within the sixty (60) day time frame under RESPA we are dealing directly with the party who has actual authority to address and resolve the matter in a timely fashion. Pursuant to 15 U.S.C. 1641 mortgage servicers are obligated to provide the obligor with the name, address and telephone number of the actual owner of the obligation. More specifically, by "owner" we mean the true "holder in due course" [or holder] within its meaning under applicable UCC provisions.

All of the documents requested and questions stated herein, including those in the enclosed QWR Addendum A needed to determine if disclosures were provided to the borrower within timeline guidelines and/or borrower affordability was ignored in the underwriting process. Further the requests for information and documents are necessary to determine who is in possession of the actual note, whether payments made to date have been properly applied, who the real holder in due course is under the subject note and whether or not there are additional co-obligors that have been created through the securitization of the subject note and/or purchase of credit default insurance contracts.

The above sets forth Civil liability under RESPA is 3X $4,688.00, plus applicable statutory damages plus attorney fees and other 3rd party costs. See TILA, 15 U.S.C. § 1602; 1640(a); and Regulation Z § 226.2.6; 12 U.S.C §226.18; 226.19; 226.34. The payments to the mortgage brokers and others that are set forth above that were not initially disclosed, and other hidden payments that may still have not been disclosed and that represent undisclosed kickbacks. Things such as Yield Spread Premium are the subject of Regulation X. 24 C.F.R. § 3500.7(a) © provides that the Good Faith Estimate must disclose each charge that will be listed in section L of the HUD-1 settlement sheet in accordance with the regulations. Appendix A to Regulation X provides that settlement

charges shall be disclosed, and that "[s]uch charges also include indirect payments or back-funded payments to mortgage brokers." The official Comment to Illustration 12 of Appendix B to Regulation X states that "any other fee or payment received by the mortgage broker from either the lender or the borrower arising from the initial funding transaction, including a yield spread premium, is to be noted on the Good Faith Estimate and listed in the 800 series of the HUD-1 Settlement Statement." The Defendants' failure to account for the payment of these funds to the Mortgage broker, and the obfuscation of the true nature of the payments, violated these and other provisions of RESPA and also constituted a violation of TILA. The payment of these fees, even if the same were disclosed, violated RESPA in another way, as well. RESPA allows reasonable payments to be made for "settlement services" actually performed by the broker. 12 U.S.C. §§ 2607(c)(1)© and 2607(c)(2). However, these payments must reflect the reasonable market value of the services actually performed by the broker. 12 U.S.C. § 2607(b); 24 C.F.R. § 3500.14© and (g). If not properly reflected or accounted for, the presumption arises that such payments were made as a form of bonus merely to create an incentive to refer the loan to that lender. Such a "referral fee" or "kickback" is illegal under Section 8 of RESPA, which provides: No person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person. The failure to properly disclose the effective cost of the mortgage transaction is a strict liability matter in violation of TILA § 1640(a), as Plaintiff fell prey to what is now commonly known as predatory lending practices and toxic loans. Not only did these activities violate TILA, and RESPA, but they also violated federal statutes, including,

but not limited to 18 USC § 1344 (relating to financial institution fraud) and 18 USC § 1957 (monetary transactions in unlawful activity). By originating the type of loan and table funding the purchase money loans that the Plaintiff obtained, Defendants have engaged in a pattern of fraud and deception across the country and in Arizona in attempting to foreclose on residential properties where a plethora of violations are evident on the face of the documents executed in connection with their consumer transaction, including violations of RESPA, HOEPA, TILA, the Wire Act, the Mail Fraud Act, the Uniform Commercial Code, and other federal and state laws. By regularly threatening foreclosure and actually scheduling foreclosure sales dates, Defendants have engaged in a pattern of racketeering activities including extortion and collection of unlawful debts which are considered prohibited activities by the Racketeer Influenced and Corrupt Organizations Act, U.S.C. 18. § 1961, et. seq. ("RICO"). They are not owed the money, nor have a right to foreclose, but have been collecting and seeking to foreclosure while retaining the money. This amounts to conversion, and all Participants are aware of this practice as it has for years been a regular and common practice, and are all complicit therein, because it is part of the overall scheme that this aspect is present. Making use of instrumentalities of interstate commerce and the wires, Defendants wired the Settlement Agent on this Transaction the loan proceeds for the purchase of the Plaintiff's Home and Primary residence. At no time has a proper chain of custody of the Note been demonstrated by Defendants As part of the chain of custody of the Promissory Notes, Defendants (a) have not disclosed who is the true holder or owner of the First and/or Second Trust Notes; (b) have not identified the parties in possession of endorsement (of which there are several who potentially have an interest in the Note and © have not made available for review the

original signed and dated Note.  In fact, Defendants have not even disclosed if the Note is part of a mortgage backed security pool, a securitization agreement, or identified a proper holder in due course person, entity, or group, though the foreclosure proceeding has been set and rescheduled already several times and it again currently scheduled to take place on the was scheduled to take place 11/6/09.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully prays that this Court:

1.    Assume jurisdiction of this case.

2.    Quash the Substitution of Trustee and Notice of Trustee Sale.

3.    Award $5,000.00, plus reasonable attorney fees and costs pursuant to ARS §33-420, plus a potential additional $1,000.00.

4.    Issue Declaratory Judgments as pled for above, including a declaration and determination that Plaintiff the rightful holder of title to the property and that any Defendant and each of them, be declared to have no estate, right, title or interest in said property.

5.    Award Plaintiff Quiet Title on the Property, including any orders necessary to release any lien, any orders compelling any Defendants and each of them to transfer legal title and possession of the subject property to Plaintiff.

6.     For a judgment forever enjoining said defendants, and each of them, from claiming any estate, right, title or interest in the subject property and from attempting to collect on or enforce the mortgage loan.

7.    Award such other actual damages, punitive damages, and other equitable relief as the court deems appropriate, including that for Conversion, Mail Fraud, Wire Fraud,

Bank Fraud and RICO.

8. Award actual damages to be established at trial pursuant to 15 U.S.C. § 1640(a)(1).

9. Award statutory damages in the amount of twice the finance charge not to exceed $1000 in accordance with 15 U.S.C. § 1640(a)(2).

10. Award plaintiffs costs and reasonable attorneys fees in accordance with 15 U.S.C. §1640.

11. Award damages mandated by federal statutes and regulations as set forth in the section on Predatory Lending, Deceptive And/or Negligent Lending and Servicing Practice, TILA, RESPA, HOEPA and Related Claims.

12. Award such other actual damages, punitive damages, and other equitable relief as the court deems appropriate.

13. Grant such other and further relief as is just and proper.

Dated, October 30, 2009.

Respectfully submitted,
/s/ Ronald Ryan
Ronald Ryan

## CERTIFICATE OF SERVICE

I certify that on October 30, 2009, a true copy of the forgoing was emailed to: Leonard McDonald; Mark Bosco; Chapter 13 Trustee; and Debtor.

/s/ Ronald Ryan
Ronald Ryan